Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATHEW LOVATO and STACIE CARMAN,<br><br>                Plaintiffs,<br><br>v.<br><br>DELTA HOSPITALITY GROUP, an Oregon corporation, dba MOTEL 6 NORTH PORTLAND; ALEXANDER FULLERTON; EMILY COTE in her individual capacity; JOHN SHADRON in his individual capacity; and CHRIS KULP in his individual capacity;<br><br>                Defendants. | Case No. 3:22-cv-264<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Violations of the 4th and 14th Amendments to the U.S. Constitution and 42 U.S.C. § 1983; Unlawful Ouster**<br><br>**JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

1.    This case involves a police-assisted illegal eviction. Plaintiffs Mathew Lovato and

Stacie Carman, brother and sister, were long-term residential tenants at a Motel 6 in North

Portland owned and operated by Defendant Delta Hospitality Group. Ms. Carman's four

children, ages 4 to 12, lived at the hotel with Plaintiffs.

FIRST AMENDED COMPLAINT - 1

2.      On February 19, 2021, Defendant Alexander Fullerton, the general manager at the hotel, refused to accept Plaintiffs' rent and told them they could no longer stay at the hotel. Defendant Fullerton called 911 and asked for police assistance in removing Plaintiffs from the property.

3.      Portland Police Officers Emily Cote, John Shadron and Chris Kulp responded to the 911 call. Officers Cote, Shadron, and Kulp informed Plaintiff Carman that she and her brother were trespassed from the property. Even after Plaintiff Carman explained they had been living at the hotel for longer than six months, Officers Cote, Shadron, and Kulp ordered Plaintiffs to leave under threat of arrest and told them they could have one hour to gather their belongings.

4.      Plaintiffs assert that Officers Cote, Shadron, and Kulp violated their rights under the U.S. Constitution by forcing them, under color of state law, to leave their rental unit without notice or due process. Plaintiffs further allege that Defendant Delta Hospitality Group doing business as Motel 6 North Portland, through its general manager Defendant Fullerton, violated their rights under the Oregon Residential Landlord-Tenant Act.

5.      Plaintiffs seek statutory and compensatory damages (including non-economic emotional distress damages) in an amount to be determined at trial.

## II.     JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' claims for federal civil rights violations under 28 U.S.C. § 1331 and § 1343.

7.      This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because all claims asserted in this action are part of the same case or controversy.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the district.

### III.     PARTIES

9.      Plaintiffs Mathew Lovato and Stacie Carman are residents of Portland, Oregon. At all relevant times, Plaintiffs were tenants within the meaning of O.R.S. § 90.100.

10.     Defendant Delta Hospitality Group ("Motel 6") is an Oregon corporation. Delta Hospitality Group owns and operates the Motel 6 located at 1125 N. Schmeer Road in Portland, OR 97217.

11.     Defendant Alexander Fullerton was, at the time of the events giving rise to this lawsuit, the General Manager of Motel 6. At all relevant times, Fullerton was acting within the scope of his employment for Motel 6.

12.     Motel 6 and Fullerton were, at all relevant times, landlords as defined by O.R.S. § 90.100.

13.     Defendants Emily Cote, John Shadron, and Chris Kulp are police officers for the Portland Police Bureau. At all relevant times, Officers Cote, Shadron, and Kulp were acting under color of state law.

### IV.     FACTUAL ALLEGATIONS

14.     Plaintiffs Mathew Lovato and Stacie Carman are brother and sister who continuously lived at Motel 6 for nearly a year.

15.     Plaintiff Carman and her four children, ages 4 to 12, were the first to start living at the Motel 6. They lived at the hotel off and on throughout 2019 and early 2020, then stayed there continuously from spring 2020 through the date of their eviction.

16. Plaintiff Lovato came to live with Plaintiff Carman in spring 2020. At first, Plaintiffs shared one hotel room. After several months, Plaintiff Lovato moved into his own room.

17. Motel 6 staff sometimes imposed limits on how long Plaintiffs could stay in the same room. For example, in 2019, staff sometimes required Plaintiff Carman and her children to leave the hotel for a 24-hour period. In 2020, staff stopped requiring Plaintiff Carman to leave the hotel, but sometimes did ask her to move to a new room. During the time when both Plaintiffs lived at the hotel, when Lovato reached 28 days in one room, staff would sometimes direct him to move his belongings into Carman's room for 24 hours before moving back into his own room for the next 28 days. Similarly, when Carman reached 28 days in one room, staff would sometimes direct her to move her belongings into Lovato's room for 24 hours before moving back into her own room.

18. Motel 6 staff applied the 28-day rule inconsistently. At the time of their eviction, Lovato and Carman had been continuously staying in the same two rooms for longer than three months, since before Thanksgiving 2020.

19. In early February 2021, Plaintiff Carman purchased a used van from a friend. Sometime during the week of February 14, 2021, Motel 6 management had the van towed.

20. When Plaintiff Carman asked hotel staff about the van, they informed her that Defendant Fullerton had had it towed.

21. The morning of February 19, 2021, Plaintiff Lovato attempted to pay rent for both Plaintiffs' rooms. Defendant Fullerton refused to accept payment and told Plaintiffs, "If you have a lawyer, you can't stay here." Plaintiffs did not at that time have a lawyer and did not know why

they were being kicked out. Fullerton told Plaintiffs they should hurry and pack because the police were "on their way."

22. Plaintiffs did not receive any kind of written eviction notice.

23. At around 11:30am on February 19, 2021, Fullerton called 911 to request that police officers come remove Plaintiffs from the property. Fullerton told the 911 dispatcher that Plaintiffs were being "aggressive and retaliatory" because the van had been towed. When the dispatcher asked for more information, Fullerton said Plaintiffs had "threatened lawsuits" and told him "karma's not going to be good for [you]." Fullerton told the dispatcher, "I want them to be out of here."

24. Portland Police Officers Cote, Shadron, and Kulp were dispatched to the scene and went into both Plaintiff's rooms. The officers told Plaintiff Carman she and Plaintiff Lovato were "trespassed" and initially offered ten minutes to pack and leave. When Plaintiff Carman told the officers they had been living at the hotel for more than six months, the officers told her that Plaintiffs could have one hour to move their belongings. The officers told Plaintiff Carman that if Plaintiffs were not gone when they returned in one hour, they would be arrested for trespassing.

25. Plaintiff Carman called Plaintiff Lovato, who was not at the hotel, and told him the police were giving them one hour to pack and move. Plaintiff Lovato returned to the hotel and spoke to the police officers. The officers told Plaintiff Lovato to hurry up and remove his belongings as quickly as possible.

26. Plaintiffs were afraid they would be arrested and did not feel they had any choice but to leave.

27. Plaintiffs put as many of their belongings as possible in Lovato's car. They had to throw away many of their belongings because they had no way to transport them.

28. Plaintiffs had to make emergency arrangements to store their belongings. Because the belongings were temporarily stored in an insecure basement, most of their remaining belongings were stolen or damaged.

29. For two days, Plaintiffs slept in the basement where they stored their belongings. There were no beds or furniture in the basement and Plaintiffs slept on the floor. During the time they stayed in the basement, Plaintiffs discovered that the basement was infested with carpet beetles.

30. Plaintiff Carman's young children, who were very upset by losing their home, spent those two nights with a babysitter, separated from their mother.

31. On the third day, Plaintiffs moved into a different hotel.

32. Plaintiffs were unable to recover the van from the towing company because they could not afford the towing and storage fees.

33. Plaintiffs were harmed by the loss of their property including items they were forced to throw away and items that were lost or damages due to lack of secure storage.

34. Plaintiffs also suffered non-economic damages in an amount to be determined at trial resulting from the loss of their home, threats and fear of arrest, and disruption to their family life.

## V.    FIRST CLAIM FOR RELIEF

**Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983
(against Defendants Cote, Shadron and Kulp)**

35. Plaintiffs incorporate the allegations set forth above.

36. Plaintiffs had a right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution as it applies to the states via the Fourteenth Amendment.

37. This right was, at the time of the incidents in this complaint, clearly established and embodied in written Portland Police Bureau policies.

38. Defendants' actions violated Plaintiffs' Fourth Amendment rights by subjecting them to an unlawful search and seizure.

## VI.  SECOND CLAIM FOR RELIEF

**Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983
(against Defendants Cote, Shadron and Kulp)**

39. Plaintiffs incorporate the allegations set forth above.

40. Plaintiffs, as tenants, had a right to be evicted only consistent with proper notice and by court order as required by O.R.S. chapters 90 and 105.

41. This right was, at the time of the incidents in this complaint, clearly established and embodied in written Portland Police Bureau policies.

42. Defendants' actions violated Plaintiffs' Fourteenth Amendment rights by depriving them of property without due process of law.

## VII.  THIRD CLAIM FOR RELIEF

**Oregon Residential Landlord/Tenant Act
(against Defendants Motel 6 and Fullerton)**

43. Plaintiffs incorporate the allegations set forth above.

44. Plaintiffs had established a tenancy at Motel 6 pursuant to O.R.S. § 90.100(47) and O.R.S. § 90.100(49).

45. As tenants, Plaintiffs could only be removed from their home in accordance with O.R.S. § 105.105 and the requirements of Oregon landlord-tenant law found in O.R.S. Chapter 90.

46. Defendant Motel 6 is vicariously liable for the actions of Defendant Fullerton.

47. By having Plaintiffs trespassed from the property and threatened with arrest without the written notice and court process required by law, Defendant Motel 6 and Defendant Fullerton unlawfully ousted Plaintiffs from their home in violation of O.R.S. § 105.105 and O.R.S. § 90.375.

## DEMAND FOR JURY TRIAL

48. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants as follows:

1. On their first claim for relief (due process), to award them compensatory (including non-economic) and punitive damages from Defendants Cote, Shadron and Kulp in an amount to be determined at trial;

2. On their second claim for relief (unlawful seizure), to award them compensatory (including non-economic) and punitive damages from Defendants Cote, Shadron, and Kulp in an amount to be determined at trial;

3. On their third claim for relief (unlawful ouster), to award them two months' periodic rent or twice their actual damages, whichever is greater, as well as punitive damages in an amount to be determined at trial from Defendants Motel 6 and Fullerton;

4. Reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988 and O.R.S. § 90.255; and

5. Such further or alternative relief in his favor as the court deems appropriate.

DATED: March 4, 2022

          **s/MariRuth Petzing**

Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs