IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATHEW LOVATO and STACIE
CARMAN,

                    Plaintiffs,

          v.

DELTA HOSPITALITY GROUP, an Oregon
corporation dba MOTEL 6 NORTH
PORTLAND; ALEXANDER FULLERTON;
EMILY COTE, in her official capacity;
JOHN SHADRON, in his official capacity;
and CHRIS KULP, in his official capacity,

                    Defendants.

Case No. 3:22-cv-00264-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

          Plaintiffs Mathew Lovato ("Lovato") and Stacie Carman ("Carman") (together,

"Plaintiffs") filed this action against defendants Delta Hospitality Group, dba Motel 6 North

Portland ("Motel 6"), Motel 6 general manager Alexander Fullerton ("Fullerton"), and Portland

Police Bureau ("PPB") officers Emily Cote, John Shadron, and Chris Kulp (the "Officer

Defendants") (together with Motel 6 and Fullerton, "Defendants"), asserting violations of their

PAGE 1 – OPINION AND ORDER

Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and a related claim under Oregon law. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

Now before the Court is Plaintiffs' motion for leave to amend complaint ("Pls.' Mot.").[1] (ECF No. 37.) For the reasons discussed below, the Court grants Plaintiffs' motion.

## BACKGROUND

Plaintiffs filed their complaint on February 17, 2022, alleging several claims against Defendants related to "a police-assisted eviction[,]" including that the Officer Defendants violated Plaintiffs' rights to due process and protection from unreasonable search and seizure, and that Motel 6 and Fullerton violated Oregon's Residential Landlord/Tenant Act. (*See* Compl., ECF No. 1.) On March 4, 2022, Plaintiffs filed a first amended complaint ("FAC"), to remove a reference to the Officer Defendants being sued only in their official capacities. (*Compare* Compl. ¶ 13 *with* FAC ¶ 13, ECF No. 10.)

According to the FAC, Plaintiffs were long-term residents at a Motel 6. (FAC ¶ 1.) On February 19, 2021, Fullerton refused to accept Plaintiffs' rent, told Plaintiffs they could no longer stay at Motel 6, and called 911 asking for police assistance in removing Plaintiffs from the property. (*Id*. ¶¶ 2-3.) The Officer Defendants responded to Fullerton's 911 call. (*Id*. ¶ 3.) Despite explaining to the Officer Defendants that they had lived at the motel for longer than six months, Plaintiffs were given one hour to gather their personal belongings and ordered to leave under threat of arrest. (*Id*.)

///

///

---

[1] The Officer Defendants oppose Plaintiffs' motion, and Motel 6 and Fullerton take no position. (*See* Pls.' Mot. at 1 n. 1.)

Plaintiffs now seek leave to amend their complaint to add two *Monell* claims against the City of Portland ("City"), and "to change certain factual allegations . . . based on information learned in discovery." (*Id.*)

## LEGAL STANDARDS

Under Rule 15(a)(2), after a responsive pleading is filed, "a party may amend its pleading with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "A court should 'freely give leave [to amend] when justice so requires.'" *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citing FED. R. CIV. P. 15(a)(2)). "This policy is to be applied with extreme liberality." *C.F. ex rel Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (citation omitted).

"In determining whether to grant leave to amend, the district court considers the presence of any of the following four factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility." *Tadros v. Wilmington Tr., Nat'l Ass'n as Tr. to Citibank, N.A.*, No. 3:17-cv-01623-AA, 2018 WL 5298144, at *2 (D. Or. Oct. 25, 2018) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); *see also Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (noting that courts should weigh the relevant factors "with all inferences in favor of granting the motion").

"Futility of amendment, however, 'can, by itself, justify the denial of a motion for leave to amend.'" *Id.* (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). "A proposed amendment is futile if it would not withstand a motion to dismiss." *Id.* (citation omitted).

## DISCUSSION

According to Plaintiffs, they believed when they filed their original complaint that PPB "had clearly established, written policies on whether and how police officers should intervene

when summoned to hotels on 'unwanted person' calls."[2] (*Id*.) However, "[t]hrough written discovery and the depositions of the [Officer Defendants,] Plaintiffs learned no such written policies exist." (*Id*.) Having learned that PPB has no relevant written policy, Plaintiffs now allege that PPB officers "nevertheless follow a uniform, department-wide custom, policy, or practice when summoned to hotels on 'unwanted person' calls" (*Id*.) Plaintiffs further allege that PPB officers "receive no formal training on the application of landlord-tenant law to 'unwanted person' calls initiated by hotels." (*Id*.)

Based on this new information, Plaintiffs seek leave to add several factual allegations to support new claims against the City because "under *Monell*, a municipality may be liable for a constitutional violation based on a 'pervasive practice or custom' or a 'failure to train.'" (Pls.' Mot. at 5) (citation omitted). The Officer Defendants respond that Plaintiffs' *Monell* claims are futile because they would not survive a motion to dismiss.[3] (*See* Ofc. Defs.' Opp'n at 3.)

## I.    APPLICABLE LAW

"To prevail on a *Monell* claim against a municipality under Section 1983, a plaintiff must demonstrate that a municipal custom or policy caused the violation of his constitutional rights." *See Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 690 (1978). "[M]unicipalities may be liable under [Section] § 1983 for constitutional injuries pursuant to: (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915

---

[2] An "unwanted person" call is a "call[] to 911 in which hotel management requests police assistance in removing guests from the premises." (Pls.' Mot. at 3.)

[3] The Officer Defendants do not assert that Plaintiffs seek leave to amend in bad faith, nor that the amendments would result in undue delay or prejudice. (*See generally* Ofc. Defs.' Opp'n Pl.'s Mot. ("Ofc. Defs.' Opp'n").)

F.3d 592, 602-03 (9th Cir. 2019). "To establish *Monell* liability, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiffs' constitutional rights; and (4) the policy, custom, or practice was the 'moving force' behind the constitutional violation." *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 2952972, at *3 (D. Or. June 3, 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

A plaintiff may establish that the policy, custom, or practice was the cause of injury in three ways: (1) "a city employee committed the alleged constitutional violation pursuant to [either] a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (simplified).

## II.  ANALYSIS

The Officer Defendants argue that the proposed amendments fail to state a *Monell* claim because, *inter alia*, they (1) are conclusory and unsupported; (2) rely on a single incident; and (3) fail adequately to establish deliberate indifference and causation.[4] (*See generally* Ofc. Defs.' Opp'n.) For the following reasons, the Court disagrees.

---

[4] To the extent the Officer Defendants argue that Plaintiffs have not supported their factual allegations with sufficient evidence, the Court notes that at this stage of the litigation, Plaintiffs need only allege facts sufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain

### A.    Sufficiency of Factual Allegations

As a general rule, "[t]here is no heightened pleading standard in the Federal Rules of Civil Procedure with respect to the 'policy or custom' requirement of demonstrating municipal liability." *Martin v. City of Portland*, No. 3:19-cv-1647-SI, 2020 WL 363391, at *5 (D. Or. Jan. 21, 2020). However, a complaint must "contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct[.]" *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174 (E.D. Cal. 2019); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding that a custom or practice claim cannot be based "on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). The complaint need only allege "the policy or custom itself . . . in general terms[.]" *Estate of Osuna*, 392 F. Supp. 3d at 1174-75 (citations omitted).

The Officer Defendants argue that Plaintiffs' allegations include "[b]are assertions that amount to just a 'formulaic recitation of the elements' of a claim [and are therefore] 'not entitled to be assumed true.'" (Ofc. Defs.' Opp'n at 4, citing *Iqbal*, 556 U.S. at 680-81 and *Dougherty*, 654 F.3d at 900.) In *Dougherty*, the court found the complaint lacked any factual allegations to support a *Monell* claim where the plaintiff alleged only that the defendant's "policies and/or customs caused the specific violations of [the p]laintiff's constitutional rights at issue in this case [and the defendant's] policies and/or customs were the moving force and/or affirmative link behind the violation of the [p]laintiff's constitutional rights and injury, damage and/or harm caused thereby." *Dougherty*, 654 F.3d at 900.

---

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

In contrast to the bare allegations in *Dougherty*, here the Plaintiffs allege, *inter alia*, that it is the City's policy, practice, or custom for PPB officers to (1) "make no inquiry into the length of time a guest has been at a hotel when summoned by hotel staff to remove guests from the property;" (2) "assume that, when hotel staff calls for assistance in removing a guest, hotel management has already made the determination that the person is not a tenant under Oregon landlord/tenant law;" and (3) "obtain the cooperation of the hotel guest in leaving peacefully [] by either directing the guest to leave and informing them they will be arrested if they do not comply, or by standing by, armed and in uniform, while hotel management directs the guest to leave." (*See* Decl. Kelsey Heilman Supp. Pls.' Mot., Ex. 3. Proposed Second Am. Compl. ("SAC") ¶¶ 58-60.) Plaintiffs further allege that the City's policies, practices, or customs, while unwritten, are "longstanding and widespread such that [they] have the force of law," that PPB officers receive "no training on the application of [Oregon] landlord/tenant law to hotels," and that "officers learn how to respond to 'unwanted person' calls by hotels on the job or by observing their fellow officers[.]" (*Id*. ¶¶ 58-60, 66.)

The Court finds that the allegations in the SAC sufficiently place the City on notice of PPB's alleged policy, custom, or practice of responding to unwanted person calls. *See Martin, 2020 WL 363391, at \*5-6* (distinguishing the requirements to survive a motion to dismiss and to establish liability and noting that to adequately plead a *Monell* claim "a cause of action must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"); *see also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("Our circuit precedent . . . requires plaintiffs in civil rights actions against local governments to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom.").

B.    **Plaintiffs' Interaction with the Officer Defendants**

The Officer Defendants also argue that Plaintiffs rely only on their "brief, singular interaction" with the Officer Defendants to "suggest that the City has a litany of policies, procedures and customs that govern how all police officers respond to any emergency calls from any hotel, and that the officers were acting pursuant to those policies." (Ofc. Defs.' Opp'n at 4.) Further, because Plaintiffs, *inter alia*, "cite to no evidence . . . other than their own interaction with police officers[,]" "Plaintiffs do not plausibly plead that the alleged unconstitutional interaction between [P]laintiffs and police officers was caused by an overarching policy expressly or impliedly adopted by City policymakers." (*Id*. at 4-5.)

Plaintiffs respond that they "obviously knew about" their own interactions with the Officer Defendants "when they filed this case, yet they did not assert claims for municipal liability at that time." (Pl.'s Reply at 5-6.) Rather, Plaintiffs explain that the *Monell* claims they now seek to plead are based on "evidence gathered in discovery, including remarkably consistent testimony from three police officers about their approach to 'unwanted person' calls at hotels generally; . . . the absence of any training on the application of Oregon landlord-tenant law to long-term guests at hotels or how to respond to 'unwanted person' calls from hotels; and responses to requests for production seeking written or training materials on those topics." (*Id*. at 6.) Plaintiffs argue that they are not required to cite to the "precise source of evidence that will ultimately be used to support each factual allegation in the [SAC.]" (*Id*.) Plaintiffs are correct. *See Martin*, 2020 WL 363391, at *6 ("Certainly, [the p]laintiff will need evidence to support its *Monell* claim at trial . . . [b]ut the [defendant] cannot avoid continuing the litigation at this stage merely by raising doubts about the persuasiveness of [the p]laintiff's eventual proof, so long as [the p]laintiff's allegations are plausible[.]").

Accepted as true, Plaintiffs' allegations "plausibly . . . allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (simplified).

### C.    Deliberate Indifference and Causation

Finally, the Officer Defendants argue that Plaintiffs' proposed amendments fail adequately to plead deliberate indifference because Plaintiffs "put forth another conclusory allegation that 'Policymakers at the city [] know that individuals experiencing homelessness or housing instability in Portland frequently live for extended periods in hotels[.]'" (Ofc. Defs.' Opp'n at 6, citing SAC ¶ 5.) According to Defendants, this allegation "carries numerous speculative and unsupported assumptions" and "[P]laintiffs fail to show a nexus between the [Officer D]efendants' alleged actions and an express or implied policy adopted by City policymakers that govern police officers' actions when they respond to emergency calls at hotels[.]" (*Id.* at 5.)

To succeed on a *Monell* claim alleging a "policy of inaction or omission . . . based on failure to implement procedural safeguards to prevent constitutional violations," a plaintiff must plead, "in addition to a constitutional violation, that the policy amounts to deliberate indifference to the plaintiff's constitutional right and that the policy caused the violation[.]" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (simplified); *see also Harris v. City of Portland Police Dep't*, No. 3:15-cv-00853-HZ, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016) ("A municipality is liable for inadequate police training only if 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact,'

meaning the plaintiff must show the municipality made a 'conscious' or 'deliberate' choice to disregard the need for training." (quoting *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014))).

Here, in support of their claim that the City was deliberately indifferent to the Fourth and Fourteenth Amendment rights of tenants living in hotels, Plaintiffs allege that City policymakers, despite knowledge of the homelessness crisis in Oregon and individuals' use of hotels for extended periods, developed no policy nor provided no training to PPB officers on the application of Oregon landlord/tenant law to such situations, and that this inaction demonstrates deliberate indifference to individuals who become tenants at hotels and caused the alleged constitutional violations here. (*See id.*; *see also* SAC ¶¶ 65-70.) In light of these allegations, the Court finds that Plaintiffs adequately plead deliberate indifference and causation in support of their *Monell* claims. *See Morton v. Cnty. of San Diego*, No. 21-cv-1428-MMA (KSC), 2022 WL 1407124, at *6 (S.D. Cal. May 4, 2022) (denying the defendant's motion to dismiss the plaintiff's *Monell* claim under a failure to train theory because, *inter alia*, the plaintiff alleged facts sufficient to demonstrate that "the need for more or different training [was] obvious, and the inadequacy [was] likely to result in the violation of constitutional rights" (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989))).

### III.    SUMMARY

Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately pleaded *Monell* claims against the City based on both a policy, custom, or practice, and a failure to train.

///

///

///

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' motion for leave to file a second amended complaint (ECF No. 37),[5] and instructs Plaintiffs to file their second amended complaint by February 10, 2023.

DATED this 8th day of February, 2023.

_Stacie F. Beckerman_

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[5] "Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Cazares v. Morris*, No. CV-09-2168-PHX-ROS, 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011) (citations omitted); *see also Bastidas v. Chappell*, 791 F.3d 1155, 1164 (9th Cir. 2015) ("[A] magistrate judge's decision to grant a motion to amend is not generally dispositive[.]").