Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Edward Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATHEW LOVATO and STACIE CARMAN,<br><br>                      Plaintiffs,<br><br>    v.<br><br>DELTA HOSPITALITY GROUP, an Oregon corporation, dba MOTEL 6 NORTH PORTLAND; ALEXANDER FULLERTON; EMILY COTE, in her individual capacity; JOHN SHADRON, in his individual capacity; and CHRIS KULP, in his individual capacity; and CITY OF PORTLAND, a municipal corporation;<br><br>                      Defendants. | Case No. 3:22-cv-00264-SB<br><br>**SECOND AMENDED COMPLAINT**<br><br>**Violations of the 4th and 14th Amendments to the U.S. Constitution and 42 U.S.C. § 1983; Unlawful Ouster**<br><br>**JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

1.    This case involves a police-assisted illegal eviction. Plaintiffs Mathew Lovato and

Stacie Carman, brother and sister, were long-term residential tenants at a Motel 6 in North

SECOND AMENDED COMPLAINT - 1

Portland owned and operated by Defendant Delta Hospitality Group. Ms. Carman's four children, ages 4 to 12, lived at the hotel with Plaintiffs.

2. On February 19, 2021, Defendant Alexander Fullerton, the general manager at the hotel, refused to accept Plaintiffs' rent and told them they could no longer stay at the hotel. Defendant Fullerton called 911 and asked for police assistance in removing Plaintiffs from the property.

3. Portland Police Officers Emily Cote, John Shadron and Chris Kulp responded to the 911 call. Officers Cote, Shadron, and Kulp informed Plaintiff Carman that she and her brother were trespassed from the property. Even after Plaintiff Carman explained they had been living at the hotel for longer than six months, Officers Cote, Shadron, and Kulp ordered Plaintiffs to leave under threat of arrest and told them they could have one hour to gather their belongings.

4. Under Oregon law, a tenant who resides in a hotel for longer than 30 continuous days becomes a tenant and is entitled to the protections of landlord-tenant law, including the requirement that the landlord provide advance written notice and obtain a court order prior to requesting law enforcement assistance in evicting the tenant.

5. Policymakers at the City of Portland know that individuals experiencing homelessness or housing instability in Portland frequently live for extended periods in hotels like Motel 6 North Portland. Despite this, the City of Portland fails to provide any training to their police officers on the application of state landlord-tenant law to residents of hotels.

6. It is the practice and custom of the City of Portland, when police officers are summoned to a hotel to remove a guest, that the officer will conduct no investigation into the length of a guest's stay and to assume that hotel staff call police to remove a guest only when the guest has not stayed long enough at the hotel to become a tenant. The objective is for the guest to

leave peacefully. Officers may accomplish this objective by either directing the guest to leave and informing them they will be arrested if they do not comply, or by standing by, armed and in uniform, while hotel management directs the guest to leave. Officers deviate from this policy of assuming they have been summoned to remove a guest with no rights as a tenant only if the tenant provides affirmative proof of their status as a tenant.

7. Under these policies, when an armed, uniformed officer directs a guest at a hotel to leave, it is the guest's burden to affirmatively raise and prove that they have been staying at the hotel for 30 days or longer. This creates a substantial risk that the City of Portland's police officer employees will assist in an illegal eviction, particularly for tenants who are especially vulnerable due to mental illness, disability, race, or other characteristics.

8. Plaintiffs assert that Officers Cote, Shadron, and Kulp violated their rights under the U.S. Constitution by forcing them, under color of state law, to leave their rental unit without notice or due process.

9. Plaintiffs further allege that Defendant Delta Hospitality Group doing business as Motel 6 North Portland, through its general manager Defendant Fullerton, violated their rights under the Oregon Residential Landlord-Tenant Act.

10. Finally, Plaintiffs allege that the City of Portland's policies on responding to requests to remove hotel guests, including the absence of adequate training for police officers, demonstrated deliberate indifference to the risk that their constitutional rights would be violated.

11. Plaintiffs seek statutory and compensatory damages (including non-economic emotional distress damages) in an amount to be determined at trial. They also seek a court order directing the City of Portland to change their policies to provide for basic investigation on length

of stay before assisting in removing a guest from a hotel and adequate training for officers on the application of Oregon landlord/tenant law to residents of hotels.

## II. JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiffs' claims for federal civil rights violations under 28 U.S.C. § 1331 and § 1343.

13. This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because all claims asserted in this action are part of the same case or controversy.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the district.

## III. PARTIES

15. Plaintiffs Mathew Lovato and Stacie Carman are residents of Portland, Oregon. At all relevant times, Plaintiffs were tenants within the meaning of O.R.S. § 90.100.

16. Defendant Delta Hospitality Group ("Motel 6") is an Oregon corporation. Delta Hospitality Group owns and operates the Motel 6 located at 1125 N. Schmeer Road in Portland, OR 97217.

17. Defendant Alexander Fullerton was, at the time of the events giving rise to this lawsuit, the General Manager of Motel 6. At all relevant times, Fullerton was acting within the scope of his employment for Motel 6.

18. Motel 6 and Fullerton were, at all relevant times, landlords as defined by O.R.S. § 90.100.

19. Defendants Emily Cote, John Shadron, and Chris Kulp are sued in their individual capacities as police officers for the City of Portland. At all relevant times, Defendants Cote, Shadron, and Kulp were acting under color of state law.

20. Defendant City of Portland is a municipal corporation and a political subdivision of the State of Oregon. As a local governmental entity, the City of Portland is a person under 42 U.S.C. § 1983. At all material times, the City of Portland employed Defendants Cote, Shadron, and Kulp.

### IV. FACTUAL ALLEGATIONS

21. Plaintiffs Mathew Lovato and Stacie Carman are brother and sister who continuously lived at Motel 6 for nearly a year.

22. Plaintiff Carman and her four children, ages 4 to 12, were the first to start living at the Motel 6. They lived at the hotel off and on throughout 2019 and early 2020, then stayed there continuously from spring 2020 through the date of their eviction.

23. Plaintiff Lovato came to live with Plaintiff Carman in spring 2020. At first, Plaintiffs shared one hotel room. After several months, Plaintiff Lovato moved into his own room.

24. Motel 6 staff sometimes imposed limits on how long Plaintiffs could stay in the same room pursuant to a hotel policy of a 28-day stay limit. For example, in 2019, staff sometimes required Plaintiff Carman and her children to leave the hotel for a 24-hour period. In 2020, staff stopped requiring Plaintiff Carman to leave the hotel, but sometimes did ask her to move to a new room. During the time when both Plaintiffs lived at the hotel, staff would sometimes direct Lovato to move his belongings into Carman's room for 24 hours before moving

back into his own room. Similarly, staff would sometimes direct Carman to move her belongings into Lovato's room for 24 hours before moving back into her own room.

25. Motel 6 staff applied the 28-day rule inconsistently. At the time of their eviction, Lovato and Carman had been continuously staying in the same two rooms for longer than three months, since before Thanksgiving 2020.

26. In early February 2021, Plaintiff Carman purchased a used van from a friend. Sometime during the week of February 14, 2021, Motel 6 management had the van towed.

27. When Plaintiff Carman asked hotel staff about the van, they informed her that Defendant Fullerton had had it towed.

28. The morning of February 19, 2021, Plaintiff Lovato attempted to pay rent for both Plaintiffs' rooms. Defendant Fullerton refused to accept payment and told Plaintiffs, "If you have a lawyer, you can't stay here." Plaintiffs did not at that time have a lawyer and did not know why they were being kicked out. Fullerton told Plaintiffs they should hurry and pack because the police were "on their way."

29. Plaintiffs did not receive any kind of written eviction notice.

30. At around 11:30am on February 19, 2021, Fullerton called 911 to request that police officers come remove Plaintiffs from the property. Fullerton told the 911 dispatcher that Plaintiffs were being "aggressive and retaliatory" because the van had been towed. When the dispatcher asked for more information, Fullerton said Plaintiffs had "threatened lawsuits" and told him "karma's not going to be good for [you]." Fullerton told the dispatcher, "I want them to be out of here."

31. Portland Police Officers Cote, Shadron, and Kulp were dispatched to the scene and went to Plaintiff Carman's room. The officers told Plaintiff Carman she and Plaintiff Lovato

were "trespassed" and initially offered ten minutes to pack and leave. When Plaintiff Carman told the officers they had been living at the hotel for more than six months, the officers told her that Plaintiffs could have one hour to move their belongings. The officers told Plaintiff Carman that if Plaintiffs were not gone when they returned in one hour, they would be arrested for trespassing.

32. Officers Cote, Shadron, and Kulp did not investigate or take any interest in the length of time Carman and Lovato had been living at Motel 6.

33. Plaintiff Carman called Plaintiff Lovato, who was not at the hotel, and told him the police were giving them one hour to pack and move.

34. Plaintiffs were afraid they would be arrested and did not feel they had any choice but to leave.

35. Plaintiffs put as many of their belongings as possible in Lovato's car and in the vehicle of a friend.

36. Plaintiffs had to make emergency arrangements to store their belongings. Because the belongings were temporarily stored in an insecure basement, most of their belongings were stolen or damaged.

37. For two days, Plaintiffs slept in the basement where they stored their belongings. There were no beds or furniture in the basement and Plaintiffs slept on the floor. During the time they stayed in the basement, Plaintiffs discovered that the basement was infested with carpet beetles.

38. Plaintiff Carman's young children, who were very upset by losing their home, spent those two nights with a babysitter, separated from their mother.

39. On the third day, Plaintiffs moved into a different hotel.

40. Plaintiffs were unable to recover the van from the towing company because they could not afford the towing and storage fees.

41. Plaintiffs were harmed by the loss of their property including items they were forced to throw away and items that were lost or damages due to lack of secure storage.

42. Plaintiffs also suffered non-economic damages in an amount to be determined at trial resulting from the loss of their home, threats and fear of arrest, and disruption to their family life.

43. Homelessness and housing instability are a serious problem in Portland, affecting thousands of people in any given month.[1]

44. It is common for people in Portland to stay in hotels for stretches lasting many months, and sometimes years, during periods of homelessness or housing instability.

45. It is common for hotel staff or management to request assistance from the City of Portland in removing a guest from the hotel premises. These are known as "unwanted person" calls.

## V. FIRST CLAIM FOR RELIEF

**Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(against Defendants Cote, Shadron and Kulp)**

46. Plaintiffs incorporate the allegations set forth above.

47. Plaintiffs had a right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution as it applies to the states via the Fourteenth Amendment.

---

[1] 2019 Point-in-Time Count of Homelessness in Portland/Gresham/Multnomah County, Oregon, *available at* https://static1.squarespace.com/static/566631e8c21b864679fff4de/t/5d434f685800cf0001847e20/1564692373569/2019+PIT+Report_FINAL.pdf.

48. A seizure occurs when there is some meaningful interference with an individual's possessory interests in that property.

49. A tenant has a possessory interest in their rental dwelling. This right was, at the time of the incidents in this complaint, clearly established by Oregon state law.

50. A police officer's active involvement in a landlord's attempt to illegally trespass a tenant violates the Fourth Amendment. This rule was, at the time of the incidents in this complaint, clearly established under U.S. Supreme Court and Ninth Circuit precedent.

51. Defendants' actions violated Plaintiffs' Fourth Amendment rights by subjecting them to an unlawful seizure.

## VI. SECOND CLAIM FOR RELIEF

**Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(against Defendants Cote, Shadron and Kulp)**

52. Plaintiffs incorporate the allegations set forth above.

53. Plaintiffs, as tenants, had a right to be evicted only consistent with proper notice and by court order as required by O.R.S. chapters 90 and 105. This right was, at the time of the incidents in this complaint, clearly established by Oregon state law.

54. A police officer's active involvement in a landlord's attempt to illegally trespass a tenant violates the Fourteenth Amendment. This rule was, at the time of the incidents in this complaint, clearly established under U.S. Supreme Court and Ninth Circuit precedent.

55. Defendants' actions violated Plaintiffs' Fourteenth Amendment rights by depriving them of property without due process of law.

///

///

///

## VII. THIRD CLAIM FOR RELIEF

### *Monell* Policy and Practice Claim, Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983
### (against Defendant City of Portland)

56. Plaintiffs incorporate the allegations set forth above.

57. The City of Portland does not provide officers with any written policies to guide their response to "unwanted person" calls at hotels.

58. It is the policy, practice, and custom of the City of Portland for police officers to make no inquiry into the length of time a guest has been at a hotel when summoned by hotel staff to remove the guest from the property. Although unwritten, this policy, practice and custom is longstanding and widespread such that it has the force of law.

59. It is the policy, practice and custom of the City of Portland for police officers to assume that, when hotel staff calls for assistance in removing a guest, hotel management has already made the determination that the person is not a tenant under Oregon landlord/tenant law. Although unwritten, this policy, practice and custom is longstanding and widespread such that it has the force of law.

60. It is the policy, practice and custom of the City of Portland that the objective when responding to an "unwanted person" call at a hotel is to obtain the cooperation of the hotel guest in leaving peacefully. Officers accomplish this objective by either directing the guest to leave and informing them they will be arrested if they do not comply, or by standing by, armed and in uniform, while hotel management directs the guest to leave. Officers deviate from this policy of assuming they have been summoned to remove a guest with no rights as a tenant only if the tenant provides affirmative proof of their status as a tenant. Although unwritten, this policy, practice and custom is longstanding and widespread such that it has the force of law.

61. There is a homelessness crisis in Oregon, and policymakers at the City of Portland know that people experiencing homelessness or housing instability often stay at hotels for longer than the 30 days required to establish a tenancy under Oregon landlord-tenant law.

62. Under the policies, practices and customs described above, when an armed, uniformed officer directs a guest at a hotel to leave, it is the guest's burden to affirmatively raise and prove that they have been staying at the hotel for 30 days or longer. This creates a substantial risk that City of Portland police officers will assist in an illegal eviction, particularly for tenants who are especially vulnerable due to mental illness, disability, race, or other characteristics.

63. The policies, practices and customs described above constitute a deliberate policy choice by the City of Portland, which as recently as 1997 provided written guidance to officers specifically addressing the definition and rights of a "tenant" in the context of hotels and motels.

64. These policies and practices were the moving force behind the constitutional violations alleged in plaintiffs' first and second claims for relief. If the City of Portland's policies required officers to perform a basic inquiry of a hotel guest's length of stay before trespassing that guest from the property, plaintiffs would not have been illegally evicted on February 19, 2021.

65. The City of Portland policies and practices described above demonstrate deliberate indifference to the rights of the Fourth and Fourteenth Amendment rights of tenants living in hotels.

///

///

///

///

## VIII. FOURTH CLAIM FOR RELIEF

### *Monell* Failure to Train Claim, Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983
### (against Defendant City of Portland)

66. The City of Portlands provide Portland police officers no training on the application of Oregon landlord/tenant law to hotels. As a result, Portland police officers learn how to respond to "unwanted person" calls by hotels on the job by observing their fellow officers following to policies and practices summarized above.

67. The absence of any training on the application of landlord/tenant law to guests in hotels or "unwanted person" calls at hotels demonstrates deliberate indifference to the Fourth and Fourteenth Amendment rights of individuals like plaintiffs who become tenants at hotels.

68. These policies and practices constitute a deliberate policy choice by the City of Portland, which as recently as 1997 offered written guidance in the form of training bulletins specifically addressing the definition and rights of a "tenant" in the context of hotels and motels.

69. These policies and practices were the moving force behind the constitutional violations alleged in plaintiffs' first and second claims for relief. If the City of Portland had adequately trained its officers on the application of Oregon landlord/tenant law to hotels and "unwanted person" calls, plaintiffs would not have been illegally evicted on February 19, 2021.

70. There is a homelessness crisis in Oregon, and it is well-known that people experiencing homelessness or housing instability often stay at hotels for longer than the 30 days required to establish a tenancy under Oregon landlord-tenant law.

71. Under the policies, practices and customs described above, when an armed, uniformed officer directs a guest at a hotel to leave, it is the guest's burden to affirmatively raise and prove that they have been staying at the hotel for 30 days or longer. This creates a substantial

risk that City of Portland police officers will assist in an illegal eviction, particularly for tenants who are especially vulnerable due to mental illness, disability, race, or other characteristics.

72. Given those facts, the lack of training described above demonstrates deliberate indifference to the rights of the Fourth and Fourteenth Amendment rights of tenants living in hotels.

## IX. FIFTH CLAIM FOR RELIEF

### Oregon Residential Landlord/Tenant Act
### (against Defendants Motel 6 and Fullerton)

73. Plaintiffs incorporate the allegations set forth above.

74. Plaintiffs had established a tenancy at Motel 6 pursuant to O.R.S. § 90.100(47) and O.R.S. § 90.100(49).

75. As tenants, Plaintiffs could only be removed from their home in accordance with O.R.S. § 105.105 and the requirements of Oregon landlord-tenant law found in O.R.S. Chapter 90.

76. Defendant Motel 6 is vicariously liable for the actions of Defendant Fullerton.

77. By having Plaintiffs trespassed from the property and threatened with arrest without the written notice and court process required by law, Defendant Motel 6 and Defendant Fullerton unlawfully ousted Plaintiffs from their home in violation of O.R.S. § 105.105 and O.R.S. § 90.375.

## DEMAND FOR JURY TRIAL

78. Plaintiffs demand a jury trial.

## PRAYER

WHEREFORE, Plaintiffs request judgment in their favor and against Defendants as follows:

1. On their first claim for relief (due process), to award them compensatory (including non-economic) and punitive damages from Defendants Cote, Shadron and Kulp in an amount to be determined at trial;

2. On their second claim for relief (unlawful seizure), to award them compensatory (including non-economic) and punitive damages from Defendants Cote, Shadron, and Kulp in an amount to be determined at trial;

3. On their third claim for relief (*Monell* policy or practice showing deliberate indifference to the violation of constitutional rights), to award them injunctive relief and compensatory (including non-economic) and punitive damages from Defendant City of Portland in an amount to be determined at trial;

4. On their fourth claim for relief (*Monell* failure to train showing deliberate indifference to the violation of constitutional rights), to award them injunctive relief and compensatory (including non-economic) and punitive damages from Defendant City of Portland in an amount to be determined at trial;

5. On their fifth claim for relief (unlawful ouster), to award them two months' periodic rent or twice their actual damages, whichever is greater, as well as punitive damages in an amount to be determined at trial from Defendants Motel 6 and Fullerton;

6. Reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988 and O.R.S. § 90.255; and

7. Such further or alternative relief in his favor as the court deems appropriate.

DATED: February 9, 2023

/s/ *Kelsey Heilman*

Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Edward Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR 97204
(503) 473-8324

Attorneys for Plaintiffs